## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Case No.

DENY CASTILLO ARROYO,
Individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

CHACON SHEEP COMPANY, LLC,
STUDT FARMS, LLC,
JENNIFER STUDT and
WARD STUDT,

      Defendants.

---

## PLAINTIFF'S COLLECTIVE ACTION COMPLAINT AND JURY DEMAND

---

Plaintiff Deny Castillo Arroyo, through his attorney Jenifer Rodriguez of Colorado Legal Services, for his Collective Action Complaint and Jury Demand, states the following:

### PRELIMINARY STATEMENT

1.  Defendants brought Plaintiff to the United States to work for Defendant Chacon Sheep Company as a sheepherder through the H-2A Program.  Instead, Plaintiff worked long hours for low wages performing non-sheepherder work in Defendants' hay fields, operating agricultural equipment, as well as Defendants' Studt Farms Pumpkin Patch and Corn Maze.

2.  Defendants refused to pay Plaintiff the proper minimum wage for the work he performed and instead compensated him at the far lower rate of pay applicable to sheepherders.

3.  Defendants have violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.,* because that Act requires employers to pay their employees the required minimum wage for all hours worked.

4.     Plaintiff brings his FLSA claim as a collective action on his own behalf and on behalf of all other similarly situated foreign workers who were employed by Defendants on H-2A sheepherder visas and performed non-exempt work under the FLSA. Plaintiff's FLSA consent form is attached hereto as Exhibit A.

5.     Plaintiff brings additional claims against Defendants for violating the Colorado Minimum Wage Act, C.R.S. §§ 8-6-101 *et seq.,* as implemented by the Colorado Minimum Wage Orders (now Colorado Overtime and Minimum Pay Standards Order ("COMPS"), 7 C.C.R. 1103-1, for failing to pay him the Colorado hourly minimum wage for each hour worked, as well as for failing to pay him overtime premiums of one-and-one-half times the regular rate of pay for each hour worked beyond forty each workweek, one-and-one-half times the regular rate for each hour worked beyond twelve each workday.  Defendants further violated Colorado's Minimum Wage Orders / COMPS by refusing to provide Plaintiff with a ten-minute rest period for each four-hour work period.

6.     Defendants also violated the Colorado Wage Claim Act ("CWCA"), C.R.S. §§ 8-4-101, *et seq.,* which required Defendants to pay Plaintiff all earned, vested and determinable wages upon the termination of the employment relationship and imposes penalties on employers who do not tender wages due upon receipt of a written demand for such wages.

7.     Plaintiff also has claims against Defendants under Colorado law for breach of contract and unjust enrichment/quantum meruit.

8.     Plaintiff seeks actual and liquidated damages, penalties, pre- and post-judgment interest, and attorney fees and costs resulting from Defendants' willful violations.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 (federal question) and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). It has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's related claims under Colorado law.

10.     Venue is proper pursuant to 28 U.S.C. § 1391. A substantial portion of the events or omissions giving rise to Plaintiff's claims occurred in Colorado. Defendants Jennifer Studt and Ward Studt reside in Colorado. Defendants Chacon Sheep Company, LLC ("Chacon Sheep"), and Studt Farms, LLC ("Studt Farms") are registered Colorado companies.

## PARTIES

11.     At all times relevant hereto, Plaintiff Deny Castillo Arroyo ("Plaintiff Castillo") is a citizen of Peru who was lawfully admitted to the United States on a temporary work visa as a sheepherder pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(a) ("H-2A Visa").

12.     Similarly, at all relevant times, all similarly situated workers whom Plaintiff seeks to represent were citizens of foreign countries who were lawfully admitted to the United States on H-2A Visas to work as sheepherders under the auspices of Defendant Chacon Sheep Company.

13.     Plaintiff Castillo is a citizen of Peru and was employed by Defendants as a temporary foreign agricultural worker on an H-2A Visa from approximately January 25, 2018, to the end of November 2018 and approximately January 27, 2019, to the end of November 2020.

14.     Defendant Chacon Sheep Company LLC ("Chacon Sheep") is a Colorado Limited Liability Company with a registered street address of 1775 12 Road, Loma, CO  81524. Defendant Chacon Sheep is owned by Defendants Jennifer Studt and Ward Studt.

15. Defendant Studt Farms, LLC ("Studt Farms") is a Colorado Limited Liability Company with a registered street address of 1775 12 Road, Loma, CO 81524. Defendant Studt Farms is owned by Defendants Jennifer Studt and Ward Studt.

16. Defendants Chacon Sheep and Studt Farms operate from 1775 12 Road, Loma, CO 81524.

17. Defendant Studt Farms, LLC does business under each of the following trade names: Studt's Pumpkin Patch and Corn Maze and Studt's Pumpkin Patch, Studt's Corn Maze and Pumpkin Patch, Studt's Haunted Acres, Studt Livestock.

18. Defendant Studt Farms' Pumpkin Patch and Corn Maze is located at 21 ½ Rd., Grand Junction, CO 81505. Upon information and belief, Defendants Ward Studt and Jennifer Studt own this property.

19. Defendant Studt Farms operates as a Pumpkin Patch and Corn Maze that is open the public, for a fee, during the fall season. In addition to a pumpkin patch and corn maze there are additional activities, games and events, including but not limited to "the Giant Slide, Hay Mountain, a Petting Zoo, Zip Lines and the Dark Acres Haunted Maze".[1]

20. Defendant Chacon Sheep Company is located at 1775 12 Road in Loma, Colorado. Upon information and belief, Defendants Ward Studt and Jennifer Studt own this property.

21. Upon information and belief, Defendants own parcels of land and also lease land from third parties for their alfalfa and grain crops.

22. Defendant Jennifer Studt is an individual residing in Colorado. Defendant Jennifer Studt owns and operates Chacon Sheep and Studt Farms and is the registered agent for

---

[1] Studt Farms, About Us Page, https://studtspumpkinpatchandcornmaze.com/about/ (last visited March 10, 2022).

both Chacon Sheep and Studt Farms.  Defendant Jennifer Studt was an employer of Plaintiff at all times relevant to this Complaint and was responsible for keeping Defendants' pay records regarding Plaintiff's labor and supervising Plaintiff at all times relevant to this Complaint. Defendant Jennifer Studt is married to Defendant Ward Studt.

23.     Defendant Ward Studt is an individual residing in Colorado.  Defendant Ward Studt owns and operates Chacon Sheep and Studt Farms.  Defendant Ward Studt was an employer of Plaintiff and supervised Plaintiff at all times relevant to this Complaint.  Defendant Ward Studt is married to Defendant Jennifer Studt.

24.     Defendants Chacon Sheep and Studt Farms (collectively, Studt Entity Defendants) constitute an enterprise engaged in commerce pursuant to the FLSA as they have unified operations and common control for a common business purpose, specific, operation of a ranch and obtaining income through sheepherding, agriculture, and tourism, all conducted as part of ranch operations.  The Studt Entity Defendants are jointly operated and managed day-to-day by Defendants Jennifer Studt and Ward Studt (collectively, the "Individual Defendants"), and are each owned by both of the Individual Defendants as described above.  The Studt Entity Defendants employ dozens of individuals who perform work for both entities throughout the year.

25.     According to Defendants' website, they "primarily farm and ranch throughout the year with grain crops and a few thousand head of sheep."[2]

26.     Upon information and belief, Defendants generate fifty percent (50%) or more of its annual dollar volume of business from sales made from Defendants' amusement and recreation business at Studt Farms.

---

[2] Studt Farms, About Us Page, https://studtspumpkinpatchandcornmaze.com/about/ (last visited March 10, 2022).

27.     At all times relevant to this Complaint, all Defendants employed employees who engaged in commerce and/or who handled, sold, or worked on goods and materials, including livestock, which had been moved in or produced for commerce.

## STATEMENT OF FACTS

**Defendants' Use of the H-2A Program**

28.     For many years, Defendants have acquired a steady number of foreign agricultural workers to work as sheepherders/range workers at Chacon Sheep, using H-2A Visas ("H-2A sheepherders or H-2A range workers").

29.     At all times relevant to this Complaint, Defendant Chacon Sheep routinely utilized its employees hired as H-2A sheepherders to work for all of the Defendants, including Studt Farms.

30.     Upon information and belief, for all relevant time periods, Defendants have utilized the services of Mountain Plain Agricultural Services to recruit and/or hire foreign workers to fill H-2A range worker positions to work for Defendants.

31.     The H-2A program enables employers to hire foreign workers to come to the U.S. to perform temporary agricultural work, including sheepherding/range work. 8 U.S.C. § 1188.

32.     The regulations that govern the H-2A program set forth the procedures and requirements for employers who apply to the USDOL to obtain labor certifications to hire temporary agricultural foreign workers at 20 C.F.R. Part 655, Subpart B (§§ 655.100-655.235).

33.     Employers seeking to hire temporary agricultural foreign workers to perform herding or production of livestock on the range as defined at 20 C.F.R. § 655.201 are required to comply with the regulations at 20 C.F.R. §§ 655.200- 655.235. Unless otherwise specified in §§ 655.200- 655.235, employers whose job opportunities meet the qualifying criteria under §§

655.200- 655.235 must fully comply with all of the requirements of §§ 655.100-655.185; part 653, subparts B and F; and part 654 of Chapter V, Title 20 of the Code of Federal Regulations.

34.     For all times relevant to this Complaint, Plaintiff and all other employees of Defendants hired through the H-2A Program were hired "to perform herding or production of livestock on the range" as defined at 20 C.F.R. § 655.201 ("H-2A sheepherders or H-2A range workers").

35.     All employers seeking to employ H-2A workers, for range and non-range agricultural occupations, must first submit a job order on Form ETA-790 ("Job Order").  20 C.F.R. § 655.121(a).  The Job Order must include, among other things, the employer's offer to (a) provide housing that is in good repair, is sanitary, and meets minimum safety standards including an adequate, convenient and safe supply of water and means to control pests and rodents; (b) provide workers' compensation coverage; (c) provide meals; (d) reimburse transportation and subsistence expenses to and from the worker's home; (e) pay workers at least twice monthly and pay wages when due; (f) provide a guarantee of payment of wages for, at minimum, a total number of work hours equal to at least three-fourths of the work period specified in the worker's ultimate employment contract or in its extensions, if any; (g) pay the worker the higher of the adverse effects wage rate, the prevailing wage, or the amount required by state and federal wage laws; and (h) not make deductions from pay for any items purchased primarily for the benefit or convenience of the employer.  20 C.F.R. §§ 655.121(a)(3), 655.122, 653.501; *see also* 20 CFR § 655.122(d)(2) (housing standards).

36.     After submitting the Job Order, the employer must then file an "Application for Temporary Employment Certification," known as an H-2A Application or Form ETA 9142A. 20 C.F.R. § 655.121(a)(1).  As part of the H-2A Application and as a condition for receiving

temporary labor certification from the United States Department of Labor ("USDOL"), the employer must attest, among other things: (a) that it has contractually forbidden any foreign recruiter it directly or indirectly engages from seeking or receiving any compensation from recruited workers; (b) that it will comply with all applicable local, state and federal laws; and (c) that it will not "intimidate, threaten, restrain, coerce, blacklist, discharge, or in any manner discriminate against . . . any person who has with just cause" exercised his rights under the employment contract.  20 C.F.R. § 655.135.[3]

37.     The wage set by regulation for H-2A workers is known as the "adverse effect wage rate" or AEWR.  *See* 20 C.F.R. §§ 655.103(b), 655.120(b), and 655.211(c).

38.     The AEWR for non-range occupations is significantly different than the AEWR for range occupations.  *Compare* 20 C.F.R. § 655.120(b) *with* 20 C.F.R. § 655.211(c).

39.     Employers of range workers (sheepherders) are permitted to pay a significantly lower wage than the minimum wage paid to other workers under the "range production of livestock" exemption to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 213(a)(6)(E) (the "Range Exemption").

40.     Due to the Range Exemption, USDOL is able to set a significantly lower wage rate for H-2A range workers than the rate for other H-2A workers.

41.     In order to qualify for the Range Exemption, as either an H-2A range worker or otherwise, the worker must actually spend the majority of his time working with livestock out on the open range.  *Saenz Mencia v. Allred*, 808 F.3d 463, 467 (10th Cir. 2015).

---

[3] The application and job order are then reviewed by the USDOL Certifying Officer who then either issues a Notice of Acceptance or issues a Notice of Deficiency.  Once accepted, the Job Order is sent to the Statewide Workforce Agency (SWA) with jurisdiction, and it is placed in intrastate and interstate clearance system to first make the jobs available to U.S. workers.  The employer is then able to petition the USCIS for H-2A visas to be issued in order to bring foreign workers to the U.S. to fill the remaining jobs. The foreign workers must then complete the visa process through the U.S. consulate in their country.  USDOL Office of Foreign Labor Certification (ETA), H-2A Employer User Guide, https://flag.dol.gov/programs/H-2A (last visited April 7, 2022).

42.     The minimum wage requirements of the FLSA apply independently of the H-2A requirements and impose obligations on employers regarding payment of wages.  20 C.F.R. § 655.122(h)(1).

43.     Specifically, the worker must be (1) "engaged in agriculture," (2) "principally engaged," (3) on the "range," and (4) in the "production of livestock." 29 C.F.R. § 780.324(a)(1)-(4).

44.     In order to be "principally engaged" in the production of livestock, workers must "spend 'the major part, or over 50 percent,' of their time on the range, producing livestock under circumstances that make the employees' hours difficult to calculate. . . .  [If other] duties take up more than half of an employee's time, he is no longer exempt." *Saenz Mencia v. Allred*, 808 F.3d 463, 467 (quoting 29 C.F.R. § 780.325(a)).

45.     H-2A workers hired as range workers (sheepherders) who do not spend the majority of their time engaged in the range production of livestock are entitled to the H-2A hourly wage applicable to non-range workers *for all hours worked*.  *Saenz Mencia*, 808 F.3d at 473 (emphasis added).

46.     From January 1, 2018, through December 31, 2018, the AEWR for H-2A range occupations in Colorado was $ 1,584.22 per month.[4]  By contrast, the AEWR for other agricultural (non-range) H-2A workers in Colorado in 2018 was $ 10.69 per hour.[5] The Colorado minimum wage in 2018 was $ 10.20 per hour.

---

[4] U.S. Dep't of Labor, *Labor Certification Process for the Temporary Employment of Aliens in Agriculture in the United States: 2018 Adverse Effect Wage Rates for Range Occupations*, 82 Fed. Reg. 60767 (Dec. 22, 2017).
[5] U.S. Dep't of Labor, *Labor Certification Process for the Temporary Employment of Aliens in Agriculture in the United States: 2018 Adverse Effect Wage Rates for Non-Range Occupations*, 82 Fed. Reg. 60628 (Dec. 21, 2017).

47.     From January 1, 2019, through December 31, 2019, the H-2A sheepherder AEWR in Colorado was $ 1,633.33 per month.[6]  By contrast, the AEWR for other agricultural H-2A workers in Colorado in 2019 was $ 13.13 per hour.[7]  The Colorado Minimum wage in 2019 was $11.10 per hour.

48.     From January 1, 2020, through December 31, 2020, the H-2A sheepherder AEWR in Colorado was $ 1,682.33 per month.[8]  By contrast, the AEWR for other agricultural H-2A workers in Colorado in 2020 was $ 14.26 per hour.[9]  The Colorado Minimum wage in 2020 was $12.00 per hour.

49.     For all relevant years, the federal minimum wage was $7.25 per hour.

50.     The terms of employment set forth in an employer's H-2A Job Order and H-2A Application, including payment of the proper wage, are incorporated by regulation and by operation of law into the contracts under which workers are employed.  20 C.F.R. § 655.122(q).

51.     For all relevant years, Defendants, through Mountain Plains Agricultural Service, submitted Job Orders and H-2A Applications to USDOL to fill sheepherder (range worker) positions at its ranch.

52.     Defendant Jennifer Studt signed these Job Orders and H-2A Applications as the prospective employer on behalf of Chacon Sheep.

---

[6] U.S. Dep't of Labor, *Labor Certification Process for the Temporary Employment of Aliens in Agriculture in the United States: 2019 Adverse Effect Wage Rates for Range Occupations*, 83 Fed. Reg. 66307 (Dec. 26, 2018).
[7] U.S. Dep't of Labor, *Labor Certification Process for the Temporary Employment of Aliens in Agriculture in the United States: 2019 Adverse Effect Wage Rates for Non-Range Occupations*, 83 Fed. Reg. 66306 (Dec. 26, 2018).
[8] U.S. Dep't of Labor, *Labor Certification Process for the Temporary Employment of Aliens in Agriculture in the United States: 2020 Adverse Effect Wage Rates for Range Occupations*, 84 Fed. Reg. 69768 (Dec. 19, 2019).
[9] U.S. Dep't of Labor, *Labor Certification Process for the Temporary Employment of Aliens in Agriculture in the United States: 2020 Adverse Effect Wage Rates for Non-Range Occupations*, 84 Fed. Reg. 69774 (Dec. 19, 2019).

53.     In doing so, Defendant Jennifer Studt represented that Defendant Chacon Sheep will comply with all legal obligations of an employer of H-2A workers, including payment of the proper wage.

54.     Defendant Chacon Sheep, through Mountain Plains Agricultural Service, submitted a Job Order and H-2A Application with dates of need ranging from January 1, 2018, through December 30, 2018, seeking up to ten (10) H-2A workers to work as sheepherders at Chacon Sheep.

55.     Defendant Chacon Sheep, through Mountain Plains Agricultural Service, submitted another Job Order and H-2A Application with dates of need ranging from December 31, 2018, through December 28, 2019, seeking up to thirteen (13) H-2A workers to work as sheepherders at Chacon Sheep.

56.     Defendant Chacon Sheep, through Mountain Plains Agricultural Service, submitted another Job Order and H-2A Application with dates of need ranging from March 1, 2019, through February 27, 2020, seeking up to four (4) H-2A workers to work as sheepherders at Chacon Sheep.

57.     Defendant Chacon Sheep, through Mountain Plains Agricultural Service, submitted another Job Order and H-2A Application with dates of need ranging from December 1, 2019, through November 28, 2020, seeking up to seventeen (17) H-2A workers to work as sheepherders at Chacon Sheep.

58.     For all relevant years, Defendants' Job Orders and H-2A Applications were approved by the USDOL and then used to petition H-2A Visas from the U.S. Citizenship and Immigration Services ("USCIS") to employ foreign sheepherders, including Plaintiff.

59.     Plaintiff filled a position requested in the Job Orders and H-2A Applications for each of the years within the relevant time period.

60.     The Job Orders for the positions filled by Plaintiff included each of the required elements described in Paragraph 35 and 20 C.F.R. §§ 655.122 and 653.501, including payment of the proper wage, free housing, transportation and board, pay periods twice a month, and worker's compensation insurance.

61.     The H-2A Applications for the positions filled by Plaintiff included each of the required elements described in Paragraph 36 and 20 C.F.R. § 655.135, including commitments to contractually forbid any foreign recruiter from seeking or receiving any compensation from recruited workers, to follow all applicable state and federal laws, and not to retaliate against workers exercising their contractual rights.

62.     The work duties described in all the Job Orders and H-2A Applications under which Plaintiff and all others similarly situated were hired indicated that the jobs to be performed were entirely sheepherding positions, and included the following in the job description:

> Required to be available 24 hours per day, 7 days a week and spend the majority of workdays on the range. All job duties are closely and directly related to the production of sheep.
> Perform any combination of the following tasks to attend sheep on the range/ranch: feed and water sheep or ensure adequate provision of both; herd flock to appropriate grazing area or move sheep to appropriate pens; round up strays using dogs and/or fence; make certain animals have access to fresh water; bed down flock near evening site; guard flock from predatory animals and from eating poisonous and/or noxious plants; administer medication to sheep as needed; assist in lambing, docking and shearing; brand, tag, clip or otherwise mark sheep for identification purposes; assist with sorting and cutting of cull sheep; feed supplemental rations to sheep.
> May assist with irrigating forage for livestock and weed control on grazing areas. May build and/or maintain fence and livestock facilities to ensure the safety and health of grazing sheep and forage; may assist in the maintenance of tools, equipment and livestock handling facilities necessary to livestock production. May attend sheep and lambs in barns during lambing season.

May be required to ride and handle horses in a manner to assure the safety of the worker, co-workers, and livestock.  The job may entail working with and around farm machinery such as tractors for supplemental feeding purposes and ATVs for movement of livestock, periodically.

63.     The parties also entered into employment contracts provided by Defendants which incorporate the same provisions from the Job Orders and H-2A applications described above.

64.     By regulation, the H-2A employer is responsible for providing each H-2A worker hired to work on any of its member ranches with a copy of this employment contract by no later than the time at which the worker applies for the visa.  20 C.F.R. § 655. 122(q).

65.     Plaintiff and Defendant Jennifer Studt, on behalf of Defendant Chacon Sheep, entered into a contract reflecting a date of January 25, 2018 (the "2018 Sheepherder Employment Contract").

66.     The 2018 Sheepherder Employment Contract stated a term of employment lasting from January 25, 2018, through February 28, 2019.

67.     The 2018 Sheepherder Employment Contract provided that Plaintiff would be paid a monthly wage of $1584.22.

68.     The 2018 Sheepherder Employment Contract provided that Plaintiff was hired as an H-2A sheepherder and agreed to perform sheepherder tasks.

69.     Plaintiff and Defendant Jennifer Studt, on behalf of Defendant Chacon Sheep, entered into a contract reflecting a date of January 27, 2019 (the "2019 Sheepherder Employment Contract").

70.     The 2019 Sheepherder Employment Contract stated the contract term from March 1, 2019, to February 27, 2020, but the Contract Signature Form stated the contract dates were from January 27, 2019, through February 27, 2020.

71.     The 2019 Sheepherder Employment Contract provided that Plaintiff would be paid a monthly wage of $1633.33.

72.     The 2019 Sheepherder Employment Contract provided that Plaintiff was hired as an H-2A sheepherder and agreed to perform sheepherder tasks.

73.     Upon information and belief, Plaintiff and Defendant Jennifer Studt, on behalf of Defendant Chacon Sheep, entered into a contract reflecting a date of December 1, 2019 (the "2020 Sheepherder Employment Contract").

74.     The 2020 Sheepherder Employment Contract stated a term of employment lasting from December 1, 2019, through November 28, 2020.

75.     The 2020 Sheepherder Employment Contract provided that Plaintiff was hired as an H-2A sheepherder and agreed to perform sheepherder tasks.

76.     The 2020 Sheepherder Employment Contract provided that Plaintiff would be paid a monthly wage of $1682.33 starting January 1, 2020.

77.     Each of the contracts from 2018 through 2020 included the following provisions:

    a.   Defendant Chacon Sheep would pay Plaintiff twice monthly.

    b.   Defendant Chacon Sheep would provide Plaintiff with free housing and meals in compliance with federal regulatory requirements as additional compensation for his work.

    c.   Defendant Chacon Sheep would maintain a workers' compensation insurance policy applicable to Plaintiff.

    d.   Defendant Chacon Sheep would not deduct items from Plaintiff's pay other than for items specified in the Contract.

**Plaintiff's Work**

78.     Plaintiff worked for Defendants for approximately eleven months during each of the years 2018, 2019 and 2020.

79.     In or around early January 2018, Plaintiff was approved for the H-2A visa to work for Defendant Chacon Sheep starting on or around January 25, 2018. Plaintiff's H-2A visa was subsequently extended to cover the time periods of Plaintiff's employment contracts through November 2020.

80.     In 2018, Plaintiff worked for Defendants from approximately January 25, 2018, through on or around November 28, 2018.

81.     Plaintiff then worked for Defendants from approximately January 27, 2019, through December 31, 2019.

82.     In 2020, Plaintiff worked for Defendants from January 1, 2020, through approximately November 28, 2020.

83.     For each of Plaintiff's employment contracts with Defendants, Plaintiff did not spend the majority of his time performing work that was closely related or directly related to herding and/or the range production of sheep.

84.     Plaintiff did not work or live on the open range.  Plaintiff resided at Defendants' ranch in Loma throughout each of his employment contracts with Defendants.  Plaintiff worked near ranch headquarters, under the supervision of Defendants Jennifer and Ward Studt and had contact with both Defendants on a regular basis.

85.     Each of the three years Plaintiff worked for Defendants, Plaintiff performed the same type of work for Defendants.

86.     From approximately the end of January through approximately April of each year, Plaintiff worked at the Defendants' ranch in Loma, Colorado, helping with the birthing of the sheep and performing other tasks around the ranch similar to those of a ranch hand such as caring for the animals in the corrals, repairing fences and structures, operating machinery, and other tasks to help with the day to day operation at the ranch.[10]

87.     During this time period, Plaintiff worked from approximately 6:00 a.m. to approximately 7:00 p.m. every day and received one hour for an unpaid lunch break and no other rest breaks.

88.     Plaintiff worked under the supervision of Defendant Jennifer Studt and Ward Studt, whom he saw nearly every day.

89.     In or around May of each year, Plaintiff began working in the alfalfa and grain fields which included but was not limited to watering and irrigating the fields and operating heavy equipment such as tractors and trucks.

90.     Plaintiff also performed tasks around the ranch, similar to those of a ranch hand, during this time period as well. On occasion, Plaintiff would drive to the mountains to take supplies to the sheepherders and help them move the sheep and their mobile housing units.

91.     During this time period each year, Plaintiff worked from approximately 6:00 a.m. to approximately 6:00 p.m.  Plaintiff was given an hour for lunch but no other rest breaks.

92.     Plaintiff worked under the supervision of Defendants Jennifer and Ward Studt during this time period.  He saw and interacted with either Defendant Jennifer Studt or Defendant Ward Studt every day.

---

[10] In 2018, Defendants sent Plaintiff to work as a sheepherder for another rancher named John Maneotis for approximately one month during this time period.

93.     Each year, starting around the beginning of June and going through August, Plaintiff worked mainly in the alfalfa and grain fields, which included but was not limited to driving tractors and trucks, irrigating crops, cutting and packing alfalfa and transporting grain.

94.     Plaintiff continued to live at the ranch during this time.

95.     Plaintiff worked in the alfalfa and grain fields with a non-H-2A employee of Defendants named Dustin Flores.  Plaintiff worked closely with Dustin Flores during this entire time period.

96.     Most days, Plaintiff and Dustin Flores began this work around 7:00 a.m. and ended around 6:00 p.m.  On the days when Plaintiff and Dustin Flores had to cut and pack alfalfa in the evenings as well, they worked from approximately 7:00 a.m. until approximately 4:00 p.m. and then again from approximately 9:00 p.m. until around 3:00 or 4:00 a.m.

97.     Every day Plaintiff received a one-hour unpaid lunch break and no rest breaks.

98.     In or around July of each year, Plaintiff spent some of his days working at Studt Farms, weeding/cleaning the pumpkin fields.  Plaintiff did this work in addition to working in the alfalfa and grain fields.

99.     Defendants Jennifer and Ward Studt continued to supervise Plaintiff's work during this time, with the assistance of Dustin Flores.

100.    Starting in or around September of each year, Plaintiff spent more of his time working at Studt Farms.  Although he continued to have some work duties at the ranch related to the alfalfa and grain crops and repairing machinery, most of Plaintiff's time was spent working at Studt Farms.

101.    Plaintiff's work in September of each year at Studt Farms consisted of multiple tasks related to preparing the pumpkin patch and the farm for the opening of the facilities to the

public in October. Plaintiff's duties included but were not limited to, cleaning and building structures and fences, preparing the corn maze and the games, fixing equipment, caring for the animals, setting up the decorations, harvesting and preparing certain crops for sale.

102.    During this time period, Plaintiff worked from approximately 7:00 a.m. until approximately 6:00 p.m. every day and received one (1) hour for lunch (unpaid) and no rest breaks.  Plaintiff continued to live at Defendants' ranch in Loma.

103.    Plaintiff's work at Studt Farms each year was performed under the supervision of both Defendants Jennifer and Ward Studt.

104.    In or around the beginning of October each year, the pumpkin patch, corn maze and all of the other attractions at Studt Farms opened for business to the public and stayed open throughout the entire month of October.

105.    During the month of October each year, Plaintiff worked mainly at Studt Farms from approximately 7:00 a.m. until approximately 6:00 p.m. every day.  Plaintiff was given one hour for lunch (unpaid) but was not given any other rest breaks.

106.    During this time, Plaintiff worked at Studt Farms cleaning the animal corrals, feeding and watering the animals, cutting the pumpkins, putting together the corn stalks and other items for sale, maintaining the decorations, rides, games, and activities to keep them in working order, maintaining the parking area and picking up and disposing of trash throughout the area of the farm that was open to the public.

107.    Each year during this same time period, there were approximately two to three other men working at Studt Farms during this time period who were also brought by Defendant Chacon Sheep on H-2A range worker visas.

108.    Each Fall season, there were a few occasions in which Plaintiff would be required to go to the mountains for approximately two or three days to assist the sheepherders move the sheep and their mobile housing units or help with the sale of the lambs.

109.    Each November, Plaintiff spent approximately half of his time working at Studt Farms, packing up and cleaning up the site for the next season and he spent the other half of his time working at the ranch, performing tasks including but limited to, repairing and cleaning machinery, tractors and trucks, fixing fences, and periodically taking supplies to the sheepherders.

110.    Plaintiff worked from approximately 7:00 a.m. to approximately 6:00 p.m. every day during this time and was given one hour for lunch and no other rest breaks.  Plaintiff continued to live at Defendants' ranch in Loma.

111.    In December 2019 and January 2020, Plaintiff worked at the ranch in Loma performing duties similar to those of a ranch hand, including taking supplies to the sheepherders.

112.    Plaintiff worked from approximately 7:00 a.m. to approximately 5:30 p.m. every day during this time period and was given one hour for lunch and no other rest breaks.  Plaintiff continued to live at Defendants' ranch in Loma.

113.    In or around the Fall of 2019, Defendant Jennifer Studt informed Plaintiff that she had received notice from the government that she had to pay one of her previous H-2A employees more money for the work he performed for Defendants because he was not working as a sheepherder.

114.    Defendant Jennifer Studt told Plaintiff that, as a result, she would have to change Plaintiff's contract to reflect the work he was doing and start to pay him by the hour.

115.     Defendant Jennifer Studt told Plaintiff on multiple occasions that she was concerned about being able to pay him at the hourly rate for his work because he worked so many hours.

116.     Neither of Plaintiff's employment contracts for 2019 or 2020 were changed to reflect the work Plaintiff was doing nor was the wage rate changed from the monthly AEWR rate for H-2A range workers to the hourly AEWR rate for H-2A non-range workers.

117.     Plaintiff spent the majority of each of his three (3) contracts with Defendants performing non-range work, and he was legally required to be paid at the AEWR applicable to non-range H-2A agricultural workers for all of his work during each of his contracts from 2018 through 2020.

118.     The total amount of pay received by Plaintiff for each contract with Defendant Chacon Sheep did not reach the AEWR required to be paid to non-range H-2A workers.

119.     The total amount of pay received by Plaintiff for all hours worked during each employment contract with Defendant Chacon Sheep did not reach the minimum wage required under the applicable Colorado Wage Order or the federal minimum wage.

120.     Defendants did not pay Plaintiff "time and a half" pay for performing more than twelve (12) hours per day and/or forty (40) hours per week for work covered under the Colorado Wage Order and/or non-exempt work under FLSA, such as duties related to Defendants' amusement/tourism business at Studt Farms.

121.     By letter dated January 24, 2022, Plaintiff informed Defendants Chacon Sheep, Jennifer Studt and Ward Studt that Defendants had violated the FLSA, the Colorado wage laws and the parties' employment contracts by not paying him the proper hourly wage and made a demand for payment of all wages owed.

122.     To date, Defendants have failed to tender any wages to Plaintiff in response to Plaintiff's demand.

**FLSA (29 U.S.C. §216(b)) Collective Action Allegations**

123.     The named Plaintiff brings his First Claim for Relief under the Fair Labor Standards Act as a collective action, pursuant to 29 U.S.C. §216(b), on behalf of himself and on behalf of all similarly situated employees currently and formerly employed by Defendants under the auspices of Chacon Sheep.  Pending any modifications necessitated through discovery, Plaintiff preliminarily defines this "216(b) Class" as follows:

> All individuals employed by Defendants on H-2A sheepherder visas at any time between April 9, 2019, and April 8, 2022.

124.     The relevant time period dates back three years from the date on which this Complaint was filed because the FLSA provides a three-year statute of limitations for claims of willful violations brought under the Act. 29 U.S.C. §255(a).

125.     All potential 216(b) Collective Action Members are similarly situated because they were contracted to work for Defendants as H-2A sheepherders and are or were subject to Defendants' common policy or practice of improperly using H-2A sheepherders to perform non-range work and failing to pay them at the non-range worker rate and causing wages to fall below the required minimum wage; and failing to pay all wages due.

126.     All Defendants were also aware that the FLSA requires them to pay at least the minimum wage to workers who spend more than half of their time doing tasks other than production of livestock on the range beginning when they first hired H-2A sheepherder employees, because Defendants were given and reviewed a copy of the H-2A Compliance Plan

which reviews the requirements under all applicable federal laws for the employment of both H-2A range and non-range occupations, including wage and housing obligations.

127.     All Defendants were aware that the FLSA requires them to pay at least the minimum wage to workers who spend more than half their time doing tasks other than production of livestock on the range by no later than December of 2019, when a former H-2A employee made a demand for wages for this same violation and subsequently filed a complaint with the Colorado Department of Labor and Employment (CDLE) against Defendants Chacon Sheep, Jennifer Studt and Ward Studt. CDLE determined that the employee did not work as a herder and was entitled to the hourly AEWR for Colorado and that Defendants violations of the CWCA were willful.

## CLAIMS FOR RELIEF

### CLAIM I – FAILURE TO PAY MINIMUM WAGE
### Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.*
### Against All Defendants

128.     Plaintiff realleges and incorporates by reference the allegations set forth in the preceding and foregoing paragraphs.

129.     Plaintiff asserts this count on his own behalf and on behalf of all others similarly situated ("others").  29 U.S.C. § 216(b).

130.     This Claim is asserted against all Defendants.

131.     Plaintiff and others were "employees" as that term is defined by the FLSA.  29 U.S.C. § 203(e).

132.     Defendants "employed" Plaintiff and others as that term is defined by the FLSA. 29 U.S.C. § 203(g).

133.    Defendants were Plaintiff's and others' "employers" as that term is defined by the FLSA.  29 U.S.C. § 203(d).

134.    Defendants employed the named Plaintiff and others in an enterprise "engaged in commerce or in the production of goods for commerce" as defined by 29 U.S.C. § 203(s)(1).

135.    Defendants violated the FLSA when they failed to pay Plaintiff and others at least the required minimum wage and failed to pay Plaintiff and others for all hours worked.  29 U.S.C. § 206(a)(1).

136.    Defendants' violations of the FLSA were willful, because all Defendants knew, or showed reckless disregard as to whether, their actions violated the FLSA.  29 U.S.C. § 255(a).

137.    As a result of Defendants' violation of the FLSA, all Plaintiffs, past and present, have suffered damages by failing to receive appropriate wages for all hours worked, in an amount to be determined at trial, and are entitled to the recovery of such amounts, liquidated damages, pre- and post-judgment interest, their reasonable attorneys' fees, costs, and such other compensation and legal remedies; and additionally, such declaratory and injunctive or other equitable relief, as the law allows.  29 U.S.C. § 216(b).

**CLAIM II – FAILURE TO COMPLY WITH COLORADO WAGE LAWS**
**Article XVII, Section 15 of the Colorado Constitution**
**Colorado Wage Claim Act (CWCA), Colo. Rev. Stat. §§ 8-4-101 *et seq.***
**Colorado Minimum Wages of Workers Act (CMWWA), Colo. Rev. Stat. §§ 8-6-101 *et seq.***
**as implemented by Colorado Wage Orders/COMPS, 7 Colo. Code Regs. 1103-1**
**Against All Defendants**

138.    Plaintiff realleges and incorporates by reference the allegations set forth in the preceding and foregoing paragraphs.

139.    This Claim arises under Colo. Rev. Stat. § 8-4-101 *et seq.*, Colo. Rev. Stat. § 8-6-101 *et seq.* and Article XVIII, Section 15 of the Colorado Constitution.

140.     Defendants were Plaintiff's "employer" as that term is defined by the CWCA and the Colorado Overtime and Minimum Pay Standards Order ("COMPS") and the pre-COMPS Colorado Minimum Wage Orders ("MWOs").  C.R.S. § 8-4-101(6); 7 C.C.R. 1103-1(2).

141.     Plaintiff was Defendants' "employee" as that term is defined by the CWCA and by the COMPS (and the MWOs) because he performed labor for the benefit of Defendants in which Defendants commanded when, where, and how much labor or services would be performed.  C.R.S. § 8-4-101(5); C.C.R. 1103-1(2).

142.     Defendants employed Plaintiff in the performance of work connected with or incidental to a "retail and service" business or enterprise that sells or offers for sale a service to the consuming public (specifically, amusement and recreation) and generates fifty percent (50%) or more of its annual dollar volume of business from such sales and is thus covered by the pre-COMPS MWOs.  7 C.C.R. 1103-1(2)(A).

143.     Plaintiff's work activities for Defendants are and have been non-exempt work under the CWCA, COMPS and the pre-COMPS MWOs.

144.     In the alternative to Plaintiff's claims that he was entitled to be paid the AEWR applicable to non-range worker H-2A workers, Defendants were required to pay Plaintiff at least the minimum wage in effect in Colorado for the years of 2018, 2019 and 2020 for work performed for Defendants that was covered by COMPS (and the MWOs).

145.     Defendants did not pay Plaintiff the minimum wage in effect in Colorado for 2018, 2019 and 2020 for any work performed.

146.     Defendants did not pay Plaintiff the required overtime wages in effect in Colorado for the years in which work was performed, because they did not pay Plaintiff at the overtime rate for work performed over twelve (12) hours per day or forty (40) hours per week.

147.    Defendants also have not paid Plaintiff for all of his time worked under the CWCA because they did not provide Plaintiff with ten-minute duty-free paid rest breaks for each four hours of work Plaintiff performed.

148.    Defendants failed to pay Plaintiff all wages or compensation due and owing to Plaintiff in accordance with Colo. Rev. Stat. § 8-4-109.

149.    Defendants incurred penalties under the CWCA when they failed to tender wages due within 14 days of receipt of Plaintiff's demand for all wages due in accordance with Colo. Rev. Stat. § 8-4-109.

150.    Defendants' violations of the Colorado Wage Claim Act were willful.

151.    As a result of Defendants' conduct, Plaintiff suffered damages including lost wages and lost use of those wages in an amount to be determined at trial.

152.    Plaintiff is entitled to recover the unpaid balance of the full amount of minimum and overtime wages he is owed, together with penalties, attorney fees and costs of the suit. C.R.S. § 8-4-109, C.R.S. § 8-4-110, C.R.S. § 8-6-118, 7 C.C.R 1103-1(8.1 (A)).

## CLAIM III – BREACH OF CONTRACT
### Against Defendants Chacon Sheep and Jennifer Studt

153.    Plaintiff realleges and incorporates by reference the allegations set forth in the preceding and foregoing paragraphs.

154.    Defendants Chacon Sheep and Jennifer Studt and Plaintiff entered into individual contracts described above as the "2018, 2019 and 2020 Employment Contracts".

155.    The parties also entered into employment contracts by virtue of H-2A clearance orders.

156.    Plaintiff performed his obligations under these contracts.

157.     Defendants breached these contracts by failing to comply with the terms and conditions of Plaintiff's employment contained therein.

158.     In the alternative, Defendants agreed to abide by the terms of the H-2A Compliance Plan, as well as the H-2A provisions and implementing regulations, and Plaintiff is the intended third-party beneficiary of those agreements.

159.     Defendants breached multiple provisions of the agreements by failing to comply with the terms of the H-2A Compliance Plan, as well as the H-2A provisions and implementing regulations.

160.     As a result of Defendants' conduct, Plaintiff suffered damages.

## CLAIM IV – UNJUST ENRICHMENT / QUANTUM MERUIT
### Against All Defendants

161.     Plaintiff realleges and incorporates by reference the allegations set forth in the preceding and foregoing paragraphs.

162.     Plaintiff conferred a benefit to Defendants by laboring in their employ, with a value to be determined at trial.

163.     Defendants appreciated the benefits conferred upon them by Plaintiff's work.

164.     Plaintiff conferred this benefit upon Defendants at his own expense, because he was unable to perform other work for the benefit of themselves of other employers while working for Defendants and Defendants did not compensate him for the full value of his labor.

165.     Under the circumstances, it would be unjust for the Defendants to retain the benefits conferred upon them by Plaintiff without payment.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment on his behalf and against Defendants and award the following:

a.  Certifying a FLSA Collective Action pursuant to 29 U.S.C. §216(b) on behalf of all similarly situated H-2A workers as described herein,

b.   Declaring that Defendants violated the FLSA,

c.   Declaring that Defendants breached the employment contracts with Plaintiff,

d.  Declaring that Defendants breached the contracts with the U.S. Department of Labor of which Plaintiff is a third-party beneficiary,

e.  Judgment in favor of Plaintiff and all similarly situated workers who opt in to this action and award any unpaid wages and liquidated damages pursuant to the FLSA,

f.  Judgment in favor of Plaintiff on his contract claims and awarding damages for Defendants' contractual breaches,

g.  Judgment in favor of Plaintiff on his Colorado Wage Claim Act claim for minimum wages and awarding damages,

h.  Judgment in favor of Plaintiff on his Colorado Wage Claim Act claim for overtime pay and awarding damages,

i.  Liquidated damages as allowed by law on Plaintiff's claim for relief under the FLSA,

j.  Penalty damages as allowed by law on Plaintiff's claim for relief under the Colorado Wage Claim Act,

k.  Attorney fees and costs as provided for by law; and

l.   Pre- and post-judgment interest, costs and expert witness fees, and such

other relief as the Court deems just and proper.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 8th day of April, 2022.

> **COLORADO LEGAL SERVICES**
>
> **s/Jenifer C. Rodriguez**
> _____
>
> Jenifer C. Rodriguez, Esq.
> Migrant Farm Worker Division
> Colorado Legal Services
> 1905 Sherman Street, Suite 400
> Denver, CO 80203
> Tel. (303) 866-9366
> Fax (303) 863-8589
> jrodriguez@colegalserv.org
>
> *Attorneys for Plaintiff*